IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONALD F. DELADE                    :
                                    :
            Plaintiff,              :
      v.                            :     3:16-CV-00415
                                    :     (JUDGE MARIANI)
JOHN CARGAN                         :
                                    :
            Defendant.              :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On March 8, 2016, Plaintiff, Donald F. DeLade, brought suit against Norman Strauss, III, John Oliver, John Cargan, Bryan Fedor, Stephen Polishan, John Doe #1, John Doe #2, John Doe #3, John Doe #4, John Doe #5 and John Doe #6. (Doc. 1). Each defendant was alleged to have at all relevant times served as a Trooper with the Pennsylvania State Police. (*Id.* at ¶¶ 10-20). The Complaint alleged in Counts I and II claims for unlawful seizure, wrongful arrest and false imprisonment against all of the defendants. Count III alleged malicious prosecution against all Defendants and Count IV presented a claim for conspiracy to violate civil rights against all defendants.

Defendants filed an Answer to Plaintiff's Complaint on June 10, 2016. (Doc. 17).

Plaintiff filed an Amended Complaint on September 30, 2016 (Doc. 21) wherein the defendants who had previously been identified as "John Does" were now identified as Peter Gutowski, David Sweeney, Keith Roman, Brandon Allis, Craig VanLouvender and William

Wagner. An Answer to the Amended Complaint was filed by the defendants on November 29, 2016. (Doc. 23).

On March 21, 2017, Plaintiff filed a Motion for Leave to File a Second Amended Complaint (Doc. 31), seeking to withdraw all claims against eight of the ten defendants then named in the action, leaving only two defendants, Troopers John Cargan and John Oliver. Plaintiff also sought to combine Counts I and II into a single Count against the remaining two defendants and sought to withdraw the conspiracy claims asserted in Count IV in its entirety while adding a Fourteenth Amendment Due Process Claim against the remaining two defendants. By Order dated May 16, 2017, the Court granted Plaintiff's Motion. (Doc. 36). Plaintiff filed his Second Amended Complaint on May 19, 2017, which named a single defendant, Trooper John Cargan. (Doc. 38). On May 26, 2017, the Plaintiff filed a Motion to correct the caption and docket (Doc. 40) to reflect that Trooper John Cargan was the only remaining defendant with all claims against the other nine defendants having been withdrawn in the Second Amended Complaint. (*Id.* at ¶¶ 2, 3). Plaintiff's Motion was concurred-in by Defendant Cargan and, by Order of the Court on May 30, 2017 (Doc. 41), the caption and docket of the case was corrected to reflect that John Cargan was the only defendant.

On March 30, 2017, Defendant Cargan, filed a Motion for Summary Judgment (Doc. 42), brief in support of the motion (Doc. 43), and a "Statement of Material and Undisputed Facts" as to which Defendant contended there was no genuine dispute for trial (Doc. 44).

Plaintiff filed a brief in opposition to Defendant's motion for summary judgment (Doc. 53) and response to the Defendant's Statement of Facts (Doc. 54). Defendant thereafter filed a Reply brief. (Doc. 58).

On June 22, 2018, the motion for summary judgment was referred to Magistrate Judge Martin C. Carlson for a Report and Recommendation ("R&R"). On August 23, 2018, Judge Carlson issued a R&R (Doc. 59) wherein he recommended that Defendant's Motion for Summary Judgment be granted. Plaintiff filed objections to the Magistrate Judge's R&R, to which Defendant filed a brief in opposition (Doc. 67) and Plaintiff replied (Doc. 68). Plaintiff's objections are fully briefed and are now before the Court for disposition.

For the reasons explained herein, the Court will grant in part and deny in part Defendant's motion for summary judgment and therefore adopt in part and reject in part the pending R&R.

## II. ANALYSIS

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or

recommendations to which objection is made." *Id.* at § 636(b)(1)(C); *see also, Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); M.D. Pa. Local Rule 72.3.

Plaintiff DeLade raises three objections to the R&R. First, Plaintiff asserts that the Magistrate Judge erred in making credibility determinations and in weighing the evidence, rather than drawing all inferences from the facts of record in favor of the Plaintiff as the non-moving party. Plaintiff asserts that the Magistrate Judge "improperly substituted his own experience, judgment and opinion for that of the jury." (Doc. 62, at 2). Plaintiff further asserts that Judge Carlson "relied on his own experience to assert facts not in evidence in order to support his conclusion that Plaintiff failed to establish that Defendant knowingly procured false evidence and knowingly provided other evidence to other officers which led to Plaintiff's arrest and detention." Plaintiff in particular takes issue with Judge Carlson's statement in a footnote where, in addressing Defendant Cargan's communication with the Escambia County Sheriff's Office regarding the warrant lodged against DeLade in Florida, the Magistrate Judge stated:

> some of the actions that DeLade ascribes to Cargan and would characterize as manipulation, such as contacting an out-of-state law enforcement agency to ask it to reconsider the extradition status of an outstanding warrant, in our view simply constitute law enforcement coordination and the exercise of investigative and prosecutorial discretion. Thus they are not matters which give rise to any constitutional claim whatsoever.

(*Id.* at 3-4)(quoting Doc. 59, at 24 n. 3). Plaintiff argues that the above-quoted statement "clearly demonstrates that Magistrate Judge Carlson substituted his judgment as to what constitutes permissible action on the part of Defendant rather than reserve that question for

the jury, where it properly belongs.  This conclusion is further supported by the fact that all troopers involved in the matter rejected and/or condemned what Magistrate Judge Carlson purported to characterize as permissible 'law enforcement coordination' and the 'exercise of prosecutorial discretion.'" (Doc. 62, at 4).

Second, Plaintiff asserts that Judge Carlson erred in concluding that probable cause existed to arrest DeLade for a firearms violation, and that there was no legal basis for a false arrest or malicious prosecution claim by DeLade.  (*Id.* at 11).  Plaintiff argues that the cases cited by Judge Carlson, *Barna v. City of Perth Amboy*, 42 F.3d 809 (3d Cir. 1994), *Edwards v. City of Philadelphia*, 860 F. 2d 568 (3d Cir. 1998), and *Wright v. City of Philadelphia,* 409 F.3d 595 (3d Cir. 2005), do not support Judge Carlson's determination. Rather, Plaintiff asserts:

> Magistrate Carlson cites to the *Barna, Edwards* and *Wright* cases for the proposition that if there is probable cause to arrest someone for <u>any</u> offense, it does not matter that they lacked probable cause for the only offense for which he was arrested.  However, it is respectfully submitted that the foregoing cases do not stand for this proposition.

(*Id.* at 11).  DeLade thus argues that at the time of his arrest, there was no probable cause to arrest him on any charge, including the charge of being a fugitive in possession of a firearm in violation of 18 Pa.C.S.A. § 6105 ("Persons not to possess, use, manufacture, control, sell or transfer firearms").

Third, DeLade argues that the Magistrate Judge erred in recommending dismissal of his Fourteenth Amendment due process claim because there is a dispute of fact for trial as

to whether Defendant Cargan fabricated evidence which, under the case law Plaintiff cites, is argued to be a basis for a Fourteenth Amendment claim, notwithstanding the general rule that a Fourteenth Amendment due process claim is unavailable where the claim is encompassed within a more specific amendment, in this case the Fourth Amendment. In arguing that Cargan's actions constituted a fabrication of evidence, Plaintiff asserts:

> Defendant arranged to have the extradition status changed from "no extradition" to "full extradition" and made it appear as if the extradition status had always been "full extradition". He did not advise his fellow troopers, who were executing the arrest on the warrant, that he had knowingly caused the change in extradition status to occur. Likewise, he did not advise his fellow troopers that Florida was not coming to get Plaintiff and would not extradite him back to Florida. By his actions and his failure to advise what he had done, he intentionally created the false impression that the warrant was – and had always been – "full extradition" such that Florida was going to extradite Plaintiff back to Florida. He also used false information – that Plaintiff was a convicted felon – to cause the change in extradition status.

(Doc. 62, at 22-23).

To fully evaluate the R&R and Plaintiff's Objections thereto, the Court begins with a review of the facts which are now undisputed as a result of Defendant's Statement of Material and Undisputed Facts and Plaintiff's response thereto (Docs. 44, 54). Those undisputed facts are as follows: On September 13, 2014, Plaintiff DeLade was walking down SR 390 in Greene Township, Pennsylvania, carrying a rifle. At that time the Pennsylvania State Police were searching for the shooter responsible for the attacks on two State Troopers at the Blooming Grove Barracks. After the Pennsylvania State Police learned of Plaintiff's identity, Defendant Cargan initiated a criminal history search for

DeLade through a database known as the Commonwealth Law Enforcement Assistance Network ("CLEAN"), which is linked to the National Crime Information Center ("NCIC"). Only the agency that originally entered the data can modify or remove it from CLEAN or NCIC. (*See* Doc. 44, at ¶¶ 2-4; Doc. 54, at ¶¶ 2-4).

A search of the CLEAN system revealed that DeLade had an outstanding warrant in the state of Florida. The warrant had an extradition status of "no extradition." Defendant Cargan called the Escambia County Sheriff's Department to request that the extradition status be changed to "full extradition." (*Id.* at ¶¶ 5-6).

It is ultimately the decision of the law enforcement agency maintaining the warrant to decide if and where they want to seek extradition, and to change the extradition status of a warrant. Escambia County, by and through Lieutenant Randy Blake, changed the extradition status of the warrant. (*Id.* at ¶¶ 7-8).

Plaintiff ultimately was not extradited. (*Id.* at ¶ 9).

However, Plaintiff was charged with two offenses in connection with his September 13, 2014 arrest: Arrest Prior to Requisition (42 Pa.C.S.A. § 9134) and Persons Not to Possess Firearms (18 Pa.C.S.A. § 6105(a)(1)). These charges were set forth in Criminal Complaints R04-0942507 and R04-0942508, respectively. (*Id.* at ¶¶ 10). Plaintiff, in admitting that he was charged with two offenses, states that he was charged with the offense of "Persons not to possess firearms" "after it became clear that the charge of Arrest Prior to Requisition would have to be dismissed because Florida was not going to extradite

Plaintiff, state police troopers then and only then charged Plaintiff with the Firearms charge."
(Doc. 54, at ¶ 10).

Although the charge of Persons Not to Possess Firearms was dismissed, DeLade ultimately pleaded guilty to a lesser charge of Disorderly Conduct (18 Pa.C.S.A. § 5503(a)(4)) and was sentenced accordingly. (Doc. 44, at ¶ 11). Plaintiff, while admitting paragraph 11 of Defendant's Statement of Material Facts, adds that "Plaintiff was not originally charged with Disorderly Conduct, either on September 13, 2014, when he was arrested for Arrest Prior to Requisition or on September 17, 2014, when he was charged with Persons Not to Possess Firearms." (Doc. 54, at ¶ 11).

## A. The Report and Recommendation

Here, Judge Carlson's analysis of Defendant's Motion for Summary Judgment begins by identifying the facts he found undisputed:

> It is undisputed that, within hours of a murderous attack upon state trooper[s], the state police confronted Donald DeLade and took him into custody. At that time it is entirely undisputed that DeLade had a rifle in his possession. It is also entirely uncontested that DeLade was a fugitive from justice because there was a longstanding warrant for his arrest issued out of the state of Florida. Furthermore, there is no genuine dispute that DeLade was aware of this outstanding warrant on September 13, 2014, when he possessed this firearm. Indeed, DeLade had admitted as much.

(Doc. 59 at 11).

The R&R correctly states that on September 17, 2014, "DeLade was charged with possession of firearms while a fugitive from justice, in violation of 18 Pa.C.S. § 6105(a)(1)"

and correctly adds that DeLade "later pleaded guilty to a lesser charge of disorderly conduct in this state criminal case." (*Id.* at 12).

The R&R then notes that DeLade:

brings these false arrest and malicious prosecution claims based upon the fact that the initial complaint lodged against the plaintiff sought to hold him for extradition to Florida based upon what is alleged to have been a materially incomplete description of the willingness of Florida authorities to extradite DeLade to that state. Thus, DeLade's complaint invites us to discount the undisputed evidence of his guilt on a state criminal charge in favor of scrutiny of the circumstances surrounding the issuance of an extradition warrant which was withdrawn within days of its issuance.

(*Id.*).

Judge Carlson thereafter rejected Plaintiff's claims of false arrest and malicious prosecution with the following explanation:

It is well-settled in this setting where an offender faces multiple potential charges that: "Probable cause need only exist as to any offense that could be charged under the circumstances [in order to defeat a false arrest or malicious prosecution claim]. *Edwards v. City of Philadelphia*, 860 F.2d at 575-76." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994). *See e.g., Damico v. Harrah's Philadelphia Casino & Racetrack*, 674 F. App'x 198, 202 (3d Cir. 2016), *reh'g denied* (Jan. 30, 2017), *cert. denied.*, 138 S. Ct. 85, 199 L. Ed. 2d 26 (2017); *Bell v. City of Harrisburg*, 457 F. App'x 164, 166 (3d Cir. 2012). Since we find that probable cause existed to charge DeLade for possession of firearms by a fugitive from justice, and DeLade was actually charged with that offense and convicted of a lesser charge, any alleged errors in the filing of the extradition complaint against this offender in our view simply do not give rise to civil culpability.

(*Id.* at 12-13).

In supporting this conclusion, the R&R later quotes *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) for the elements of a claim for malicious prosecution:

To prove malicious prosecution under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

(Doc. 59, at 15-16) (quoting *Estate of Smith*, 318 F.3d at 521). As *Estate of Smith* further

explained:

The Smiths' claim is based on the issuance of a warrant for Smith's arrest and the subsequent withdrawal of charges for lack of probable cause. As already discussed, however, based on the information available to officers at the time the warrant was sought, there was probable cause for arrest. Because initiation of the proceeding without probable cause is an essential element of a malicious prosecution claim, summary judgment in favor of the defendants was appropriate on this claim.

With respect to the claim of false arrest, the R&R, quoting *James v. City of Wilkes*

*Barre*, 700 F.3d 675, 680 (3d Cir. 2012), explained:

To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988).

(Doc. 59, at 16).

Judge Carlson further noted that probable cause to arrest exists "'whenever

reasonably trustworthy information or circumstances within a police officer's knowledge are

sufficient to warrant a person of reasonable caution to conclude that an offense has been

committed by the person arrested.' *U.S. v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing

*Beck v. Ohio*, 379 U.S. 89, 91 (1964))." (Doc. 59 at 16).

Judge Carlson thus stated that:

> An arrest by a police officer "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). In conducting an inquiry into whether probable cause to arrest existed, a court should consider the totality of the circumstances presented, and "must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest." *United States v. Stubbs*, 281 F.3d 109, 122 (3d Cir. 2002).

(*Id.* at 16-17).

In addition, the R&R makes reference to a "corollary to this probable cause analysis which lies at the heart of many false arrest or malicious prosecution claims." (*Id.* at 18).

Judge Carlson explained:

> Oftentimes an individual may potentially face an array of charges, and probable cause may exist as to some, but not all, of these potential offenses. In this factual setting:
>
>> The test for an arrest without probable cause is an objective one, based on "the facts available to the officers at the moment of arrest." *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d. 142 (1964); *Edwards v. City of Philadelphia*, 860 F.2d 568, 571 n.2 (3d Cir. 1988). Evidence that may prove insufficient to establish guilt at trial may still be sufficient to find the arrest occurred within the bounds of the law. *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). As long as the officers had some reasonable basis to believe [that the arrestee] had committed a crime, the arrest is justified as being based on probable cause. *Probable cause need only exist as to any offense that could be charged under the circumstances. Edwards v. City of Philadelphia*, 860 F.2d at 575-76.

(*Id.* at 18-19) (quoting *Barna*, 42 F.3d at 819).

Judge Carlson then determined that the false arrest and malicious prosecution claims brought by DeLade must fail because there was probable cause to charge DeLade with being a fugitive in possession of firearms in violation of Pennsylvania law. Thus, the R&R stated:

> In the instant case we submit that DeLade's false arrest and malicious prosecution claims fail as a matter of law because we agree with the arresting officer in this case, Corporal Strauss, that "there were multiple reasons" to take DeLade into custody, (Doc. 45-1, p. 10, line 8), including both a belief that he was a fugitive from justice due to the outstanding warrant, and that he had committed a weapons offense through his possession of this firearm while he was a fugitive from justice, in violation of 18 Pa. C.S. § 6105(a)(1).

(Doc. 59, at 21).

The elements of the offense set forth in § 6105(a)(1) are as follows:

> (a) Offense defined.--
> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1). As Magistrate Judge Carlson explained, "[a] fugitive from justice . . . has long been defined broadly as: 'A person who commits a crime in one state, . . . and departs therefrom, and is found in another state." (Doc. 59, at 22)(quoting *Appleyard v. Commw. of Mass.*, 203 U.S. 222, 232, 27 S.Ct. 122, 51 L.Ed.2d 161 (1906)).

Accordingly, Judge Carlson concluded:

> Given this broad definition of a fugitive from justice, we believe that probable cause existed to consider DeLade a fugitive from justice at the time of his

arrest on September 13, 2014. Indeed, it is uncontested that there was a warrant outstanding for his arrest from the state of Florida at that time, and DeLade knew that he was wanted by Florida authorities. Given the "broad meaning" typically given to the term fugitive from justice, *Com. ex rel. Bonomo v. Haas*, 428 Pa. 167, 171, 236 A.2d 810, 813 (1968), we do not believe that DeLade's fugitive status for purposes of culpability under §6105(a)(1) turns on the scope of the extradition authorized by the jurisdiction that issued the warrant for his arrest.

(*Id.*).

Having determined that Plaintiff DeLade was a fugitive from justice under § 6105(a)(1), the R&R concisely states the core reasoning which supports the Magistrate Judge's determination that there was probable cause on September 13, 2014, to charge DeLade with possession of firearms by a fugitive:

Finding that DeLade qualified as a fugitive from justice under § 6105(a)(1), we have little difficulty concluding that there was also probable cause to believe that he possessed a firearm on September 13, 2014. In fact, DeLade's possession of this firearm is completely uncontested and is readily acknowledged by the plaintiff. Therefore, on September 13, 2014 probable cause existed to believe that all of the elements of the charge of possession of firearms by a fugitive from justice, in violation of 18 Pa. C.S. §6105(a)(1), were met in DeLade's case, and by September 17, 2014 DeLade was charged with this offense.

(*Id.* at 23).

The R&R further explains and reiterates that because "[p]robable cause need only exist as to any offense that could be charged under the circumstances", summary judgment must be entered against DeLade on his claims of false arrest and malicious prosecution. (Doc. 59, at 23).

The recommendation that summary judgment be entered in favor of Defendant because probable cause existed to support the charge against DeLade of being a Fugitive in Possession of Firearms is offered by the Magistrate Judge as a basis for a grant of qualified immunity with respect to Plaintiff's claims. (*Id.* at 21). *See Wright*, 409 F.3d at 604 ("Even though our discussion of probable cause was limited to the criminal trespass claim, it disposes of her malicious prosecution claims with respect to all of the charges brought against her, including the burglary. Because Wright failed to establish that a constitutional right was violated, the officers are entitled to qualified immunity with respect to the malicious prosecution claim as well.").

Finally, the R&R addressed Plaintiff's due process claim and found it insufficient. The R&R relied on *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) for the proposition that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process' must be the guide for analyzing these claims." (*Id.* at 25). The R&R concluded that because DeLade's claims under the Fourth Amendment were deficient, they may not be revived by resorting to the "more generalized rubric of recasting them as due process allegations." (*Id.* at 25-26).

## B. Discussion of Plaintiff's Objections

### 1. Plaintiff's Objection to the R&R's Recommendation as to the Dismissal of the False Arrest and Malicious Prosecution Claims

Plaintiff first objects to the R&R on the basis that the Magistrate Judge erred in making credibility determinations in weighing the evidence to view it in the light most favorable to Defendant Cargan rather than Plaintiff, the non-moving party.

It is undoubtedly correct that the analysis to be undertaken in review of a motion for summary judgment does not permit a Court to make credibility determinations or weigh the evidence. It is likewise true that the Court must draw all reasonable inferences in favor of the non-moving party.[1]

In support of this objection to the R&R, Plaintiff cites to the testimony of Trooper Roman, whose testimony Plaintiff summarizes as stating that "if he was holding someone in

---

[1] *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013):

> Under Rule 56, . . . a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party asserting that there is a genuine dispute of material fact must support that assertion by "citing to particular parts of … the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A). In evaluating the motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

716 F.3d at 772. *See also, Doebblers' Penn. Hybrids, Inc. v. Doebbler,* 442 F.3d 812, 820 (3d Cir. 2006)(stating that credibility determinations "are inappropriate to the legal conclusions necessary to a ruling on summary judgment. . . .A District Court should not weigh the evidence and determine the truth itself, but should instead determine whether there is a genuine issue for trial."); *J. F. Feeser, Inc. v. Serv-A-Portion, Inc.,* 909 F.2d 1254, 1531 (3d Cir. 1990) ("We are keenly aware that credibility determinations are not the function of the Judge; instead the non-movant's evidence must be credited at this stage.").

custody for a warrant, he would want to know about such contact with the other agency", that he "has never heard of someone contacting another law enforcement agency to have them change their extradition records", and that "[s]uch actions did not sound appropriate to him and he would not do it." (Doc. 62, at 4).

Plaintiff also cites to the testimony of Trooper Sweeney asserting that he testified "that he would expect Defendant to tell the arresting troopers that Florida was not coming to get Plaintiff, and that he would want to know about the contact because he would not want to be complicit in such actions." (*Id.*).

Trooper Sweeney also testified:

Q:     Okay.  And the crime that you were dealing with then as far as you knew was felony traffic stop, right?

A:     That's all I knew what it was. I knew there was something more to it, but I didn't know what the details were. Obviously that he was calling for a felony traffic stop, there had to be something that he knew that I didn't.

(Dep. of Sweeney, at 33:6-12).

Plaintiff further cites to the testimony of Trooper Fedor who testified that the charge he filed against DeLade of Arrest Prior to Requisition, was charged with the expectation that Florida was "coming to get him [Plaintiff]." (Dep. of Fedor, at 18:9-13).

Plaintiff also cites to the deposition testimony of Trooper Polishan and Trooper Wagner, asserting in summary fashion that it was the opinion of Trooper Polishan that it was not appropriate for "one law enforcement agency to contact another agency to have them

change their extradition records" (Doc. 62, at 5)(citing Dep. of Polishan, at 29) and it was the opinion of Trooper Wagner that contacting another agency to have them change their extradition records was not "the way to do business" (*id.*)(citing Dep. of Wagner, at 30-32).

Plaintiff then argues that Magistrate Judge Carlson "utterly disregarded the foregoing testimony when he gratuitously labeled Defendant's conduct as 'law enforcement coordination' and 'the exercise of prosecutorial discretion.'" (Doc. 62, at 5). Plaintiff thus asserts that "[t]he evidence, viewed in the light most favorable to Plaintiff, supports the finding that Defendant manipulated the alteration of the warrant status and then caused that false information to be relied upon by troopers to arrest Plaintiff." (*Id.* at 6).

It is undisputed that Defendant Cargan "called the Escambia County Sheriff's Department to request that the extradition status be changed to 'full extradition'." (Doc. 44, at ¶ 6). Likewise, it is undisputed that "[i]t is ultimately the decision of the law enforcement agency maintaining the warrant to decide if and where they want to seek extradition, and to change the extradition status of a warrant." (*Id.* at ¶ 7). And it is also undisputed that "Escambia County, by and through Lieutenant Randy Blake, changed the extradition status of the warrant." (*Id.* at ¶ 8).

Based on the revised NCIC notice issued when Escambia County changed the NCIC notice on their warrant to indicate full extradition, Troopers Fedor and Polishan swore out a criminal complaint for the arrest of the Plaintiff pursuant to 42 Pa.C.S.A. § 9134, Arrest prior to requisition. The aforesaid § 9134 provides as follows:

Whenever any person within this Commonwealth shall be charged on the oath of any credible person before any judge or issuing authority of this Commonwealth with the commission of any crime in any other state, and, except in cases arising under section 9127 (relating to extradition of persons not present in demanding state at time of commission of crime) with having fled from justice or with having been convicted of a crime in that state and having escaped from confinement or having broken the terms of his bail, probation or parole, or whenever complaint shall have been made before any judge or issuing authority in this Commonwealth, setting forth on the affidavit of any credible person in another state that a crime has been committed in such other state and that the accused has been charged in such state with the commission of the crime, and, except in cases arising under section 9127, has fled from justice or with having been convicted of a crime in that state and having escaped from confinement or having broken the terms of his bail, probation or parole and is believed to be in this Commonwealth, the judge or issuing authority shall issue a warrant directed to any peace officer commanding him to apprehend the person named therein wherever he may be found in this Commonwealth and to bring him before the same or any other judge or issuing authority who or which may be available in, or convenient of, access to the place where the arrest may be made to answer the charge or complaint and affidavit, and a certified copy of the sworn charge or complaint and affidavit upon which the warrant is issued shall be attached to the warrant.

42 Pa.C.S.A. § 9134.

The first flaw in Plaintiff's arguments arises from the text of § 9134 itself. In short, § 9134 allows a person who has fled from one state to Pennsylvania to be arrested in Pennsylvania before an actual request for extradition. In *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007), the Defendant, on appeal, argued, *inter alia*, that the District Attorney had provided false information in the application for the Governor's Warrant for extradition. She contended that the statements that she was a fugitive and that her whereabouts were unknown were untrue, *id.* at 272.

Sands was initially arrested outside of Pennsylvania and thus the Court noted that her "arrest and return to Pennsylvania was governed by extradition statutes in Florida and Pennsylvania." *Id.* at 271. The Court observed that the extradition procedures in Florida and Pennsylvania "are virtually identical because both states adopted the Uniform Criminal Extradition Act. See 42 Pa. Cons. Stat. § 9121 *et seq.*; Fla. Stat. § 941.01 *et seq.*" *Id.*

Those procedures were explained as follows:

> The statutes establish a procedure through which a district attorney can file an application with the governor of his state, who then requests the governor of the other state to extradite a defendant who has fled to the other state. *See* 42 Pa. Cons. Stat. § 9143-9144; Fla. Stat. § 941.22-941.23

> The statutes also provide a separate process by which a defendant who has fled to another state can be arrested there before an actual request for extradition. *See* 42 Pa. Cons. Stat. § 9134; Fla. Stat. § 941.13. Using this process, a judge in Florida can issue a warrant for the arrest of a person there based on credible information that the individual has been charged in Pennsylvania with the commission of a crime and "fled" from justice. Fla. Stat. § 941.13.

502 F.3d at 271.

The extradition procedure in Pennsylvania then provides in § 9135, "Arrest without a warrant", that:

> The arrest of a person may be lawfully made also by any peace officer or a private person without a warrant upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by death or imprisonment for a term exceeding one year, but when so arrested the accused must be taken before a judge or issuing authority with all practicable speed, and complaint must be made against him under oath setting forth the ground for the arrest as in section 9134 (relating to arrest prior to requisition), and thereafter his answer shall be heard as if he had been arrested on a warrant.

42 Pa.C.S.A. § 9135.

Further, in § 9136, "Commitment to await requisition":

> If from the examination before the judge or issuing authority it appears that the person held is the person charged with having committed the crime alleged, and, except in cases arising under section 9127 (relating to extradition of persons not present in demanding state at time of commission of crime), that he has fled from justice, the judge or issuing authority must, by a warrant reciting the accusation, commit him to the county jail for such a time, not exceeding 30 days, and specified in the warrant, as will enable the arrest of the accused to be made under a warrant of the Governor on a requisition of the executive authority of the state having jurisdiction of the offense unless the accused give bail as provided in section 9137 (relating to bail), or until he shall be legally discharged.

42 Pa.C.S.A. § 9136.

In this case, on September 18, 2014, an extradition hearing was held before Court of Common Pleas of Wayne County Judge Raymond L. Hamill where the District Attorney informed the Court:

> Attorney Edwards: Your Honor, we're here in the matter of Commonwealth versus Donald DeLade. I believe today was set before Your Honor on an extradition hearing. At this time the Commonwealth has been advised that there is a new charge filed by, I believe the Pennsylvania State Police from Pike County, and we are willing to dismiss the extradition filed against this defendant. He will stay in Wayne County Prison for a short period of time today until Pike County law enforcement comes and retrieves him for arraignment on the new charge filed in Pike County.
> . . . .
>
> The Court: Alright. So as I understand it, the extradition is not needed now?
>
> Ms. Edwards: Correct, Your Honor.

(Doc. 55, Ex. M, at 2).

In this case, it is also undisputed that DeLade was a fugitive as defined by the Court in *Sands*. There, the Court adopted the definition of a fugitive in *Commonwealth ex rel. Smalley v. Aytch*, 371 A.2d 1018 (1977):

> If, having been within a state, [a defendant] is accused of having committed while there that which by its laws constitutes a crime, and when he is sought to be subjected to criminal proceedings therefor, he has left its jurisdiction and is found within another state he is a fugitive from justice. It is not important whether the accused leaves the state to avoid prosecution of not. His motive does not affect his relation to the law.

*Sands*, 502 F.3d at 273 (quoting *Smalley*, 371 A.2d at 1021).

Since the decision in *Sands* makes clear that § 9134 provides "a separate process by which a defendant who has fled to another state can be arrested there before an actual request for extradition", Trooper Cargan's contacts with the Escambia County Sheriff's Department in Florida do not render the arrest of Plaintiff under 42 Pa.C.S.A. § 9134 without probable cause. That is to say, DeLade was subject to arrest in Pennsylvania under § 9134 without a prior determination of Florida's right, or willingness, to extradite DeLade.

The second and more fundamental flaw in Plaintiff's objections lies in his claim that the Magistrate Judge erred in determining that, because probable cause existed to arrest DeLade for a firearms violation, there is no legal basis for a false arrest or malicious prosecution claim. (Doc. 62, at 11). Plaintiff argues that the decisions in *Barna*, *Edwards*, and *Wright*, discussed *supra*, do not support the Magistrate Judge's determination. Further, Plaintiff argues that the Magistrate Judge incorrectly advances those cases to support the

proposition that "probable cause need only exist as to any offense that could be charged under the circumstances". (*Id.* at 12). Accordingly, Plaintiff argues:

> The foregoing caselaw does not establish what the Defendant and Magistrate Judge Carlson contend it establishes – that if probable cause exists as to a charge that was not filed but <u>could have been</u>, then there can be no claim for false arrest.

(*Id.* at 13-14)(underline in original). Accordingly, Plaintiff asserts: " [r]ather, the clear language of the case law establishes that if probable cause exists as to at least one charge filed, then a false arrest claim does not lie." (*Id.* at 14).

Thus, it appears that Plaintiff argues that the criminal complaint issued against him and filed September 17, 2014, for being a fugitive in possession of a firearm in violation of 18 Pa.C.S.A. § 6105(a)(1) was insufficiently linked or based upon the events of September 13 and Plaintiff's arrest at that time and thus cannot defeat his claims for false arrest and malicious prosecution arising out of the September 13, 2014, criminal complaint under 42 Pa.C.S.A. § 9134. In support of this argument, Plaintiff asserts that "[t]hree of the four officers involved in Plaintiff's arrest either had no information as to why they were arresting Plaintiff or believed they were arresting Plaintiff for the extradition warrant" and presents excepts from the testimony of Trooper Allis, Trooper Sweeney, Trooper Roman, and Trooper Fedor. (Doc. 62, at 14-16). Plaintiff does note that Trooper Norman Strauss testified that there were "multiple bases" for Plaintiff's arrest but asserts that this testimony "was clearly disputed by other testimony." (*Id.* at 16).

Plaintiff's arguments are foreclosed by the Supreme Court's decision in *Devenpeck v. Alford*, 543 U.S. 146, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). There, the Court presented the question before it as:

> whether an arrest is lawful under the Fourth Amendment when the criminal offense for which there is probable cause to arrest is not "closely related" to the offense stated by the arresting officer at the time of arrest.

*Devenpeck*, 543 U.S. at 148.

The facts of *Devenpeck* require recounting. On the night of November 22, 1997, Jerome Alford pulled his car off the road behind a disabled automobile and its passengers. He activated his "wig-wag" headlights, which flash the left and right lights alternately. As Alford pulled off the road, an officer of the Washington State Patrol passed the disabled car from the opposite direction and turned around to attend to the disabled vehicle and its passengers. When he arrived, Alford hurried back to his car and drove away. The motorist asked Officer Haner if Alford was a "cop", adding that Alford's statements and headlights had given him that impression. *Id.* With this information, Officer Haner radioed his supervisor, Sergeant Devenpeck, who was concerned that Alford was an "impersonator" or a "wannabe cop." He pursued Alford's vehicle and pulled it over. Through the passenger side window, Haner observed Alford listening to the Kitsap County Sheriff's Office police frequency on a special radio and saw handcuffs and a hand-held police scanner in the car. Alford's responses to Haner's questions seemed to Haner to be "untruthful and evasive." Devenpeck arrived on the scene a short time later. He also questioned Alford specifically

about the wig-wag headlights. In the course of his questioning, Devenpeck saw a tape recorder on the passenger seat of the Alford's car with the play and record buttons depressed. *Id.* at 149. He ordered Officer Haner to remove Alford from his car, played the recorded tape, and found that Alford had been recording his conversations with both officers. Alford was then arrested for violation of the Washington Privacy Act. Devenpeck reviewed the language of the Privacy Act from his vehicle, attempted unsuccessfully to reach a prosecutor to confirm that the arrest was lawful, and directed Officer Haner to take Alford to jail. *Id.* at 149-150. Alford was charged with violating the State Privacy Act and issued a ticket for his flashing headlights under Washington state law. Under Washington state law, Alford could be detained on the flashing headlights violation only for the period of time "reasonably necessary" to issue a citation. *Id.* at 150.

The state court subsequently dismissed both charges.

Alford then filed suit against Devenpeck and Haner alleging claims for unlawful arrest and imprisonment on the basis that Devenpeck and Haner arrested him without probable cause in violation of the Fourth and Fourteenth Amendments. The case proceeded to trial. The jury returned a verdict in favor of the police officers. However, a divided panel of the Court of Appeals for the Ninth Circuit reversed. The majority "concluded that petitioners could not have had probable cause to arrest because they cited only the Privacy Act charge and tape recording officers conducting a traffic stop is not a crime in Washington." *Id.* at 152 (internal quotation marks omitted).

Importantly, the Ninth Circuit majority rejected the police officers' claim that probable cause existed to arrest Alford for the offenses of impersonating a law enforcement officer and obstructing a law enforcement officer because those offenses were not "closely related" to the offense invoked by Devenpeck as he took Alford into custody. *Id.*

The Supreme Court granted certiorari and reversed and remanded the matter to the Court of Appeals. In so doing, the Supreme Court first reiterated that "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest." *Devenpeck*, 543 U.S. at 152. The Court thereafter explained its determination that the Court of Appeals had erred in reversing the jury verdict in favor of the police officers:

> In this case, the Court of Appeals held that the probable-cause inquiry is further confined to the known facts bearing upon the offense actually invoked at the time of arrest, and that (in addition) the offense supported by these known facts must be "closely related" to the offense that the officer invoked. . . . We find no basis in precedent or reason for this limitation.
>
> Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. *See Whren v. United States*, 517 U.S. 806, 812-813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (reviewing cases); *Arkansas v. Sullivan*, 532 U.S. 769, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001) (*per curiam*). That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, "'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" *Whren, supra*, at 813, 116 S.Ct. 1769 (quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective

intent." *Wren*, *supra*, at 814, 116 S.Ct. 1769. "[E]venhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." *Horton v. California*, 496 U.S. 128, 138, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

The rule that the offense establishing probable cause must be "closely related" to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest is inconsistent with this precedent. Such a rule makes the lawfulness of an arrest turn upon the motivation of the arresting officer – eliminating, as validating probable cause, facts that played no part in the officer's expressed subjective reason for making the arrest, and offenses that are not "closely related" to that subjective reason. *See, e.g., Sheehy v. Plymouth*, 191 F.3d 15, 20 (C.A.1 1999); *Trejo v. Perez*, 693 F.2d 482, 485–486 (C.A.5 1982). This means that the constitutionality of an arrest under a given set of known facts will "vary from place to place and from time to time," *Whren*, *supra*, at 815, 116 S.Ct. 1769, depending on whether the arresting officer states the reason for the detention and, if so, whether he correctly identifies a general class of offense for which probable cause exists. An arrest made by a knowledgeable, veteran officer would be valid, whereas an arrest made by a rookie *in precisely the same circumstances* would not. We see no reason to ascribe to the Fourth Amendment such arbitrarily variable protection.

*Id.* at 152-154 (italics in original).

The Washington police officers had contended that probable cause existed to arrest Alford for obstructing a law enforcement officer or for impersonating a law enforcement officer, offenses with which he was not charged and which the Court of Appeals had held were "legally irrelevant." *Id.* at 156. The Supreme Court rejected the position of the Court of Appeals in the following language:

Those who support the "closely related offense" rule say that, although it is aimed at rooting out the subjective vice of arrests made for the wrong reason, it does so by objective means – that is, by reference to the arresting officer's statement of his reason. The same argument was made in *Whren*, *supra*, in

defense of the proposed rule that a traffic stop can be declared invalid for malicious motivation when it is justified only by an offense which standard police practice does not make the basis for a stop. That rule, it was said, "attempt[s] to root out subjective vices through objective means," *id.*, at 814, 116 S.Ct. 1769. We rejected the argument there, and we reject it again here. Subjective intent of the arresting officer, however it is determined (and of course subjective intent is always determined by objective means), is simply no basis for invalidating an arrest. Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest.

*Id.* at 154-155.

The decision in *Devenpeck* is significant for a number of reasons, but principally for purposes of the matter now before this Court, the Supreme Court held that the determination of whether probable cause exists is not limited to the offense with which the arresting officers subjectively intend to charge the defendant and that the probable cause determination is also not limited by a requirement that the known facts which support probable cause must be closely related to the offense that the officer actually invoked. Thus, the Court in *Devenpeck* emphasized that the police officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause," 543 U.S. at 153.

Here, the known facts at the time of the arrest were that DeLade was a fugitive and was in possession of a firearm as he walked down Route 390 on September 13, 2014. (Doc. 44, at ¶¶ 2, 5; Doc. 54, at ¶¶ 2, 5). These facts present probable cause for an arrest based on 18 Pa.C.S.A. § 6105(a)(1), quoted *supra*, and 18 Pa.C.S.A. § 6105(c)(1), which

states in relevant part that a "person who is a fugitive from justice" "shall be subject to the prohibition of subsection (a)", 18 Pa.C.S.A. § 6105 (c)(1).

The police criminal complaint filed against DeLade on September 17, 2014, for violation of § 6105 states the facts on which Trooper Oliver based Plaintiff's arrest. Those facts, set forth in Oliver's Affidavit of Probable Cause are as follows:

> On 09/13/14 at 1016 hours, Monica Lee HERMES contacted PSP Blooming Grove and reported that she had seen a white male with an assault rifle walking on SR 390 in Greene Twp., Pike County, PA while she was driving into work. HERMES described the male as 6'00, thin built, wearing a black sweatshirt and khaki pants.
>
> On 09/13/14 at 1150 hours, Mark KELSON contacted PSP Blooming Grove and reported that he observed a white male wearing a black hooded sweatshirt and tan pants carrying an assault rifle on SR 390 in front of Terry's auto.
>
> I, along with Tpr. Mark KEYES, searched the area for the unknown man with the weapon with negative results. We then started to conduct a neighborhood canvas in an attempt to identify the man with the assault rifle. We started interviewing residents near Terry's auto and interviewed Lori Marie DELADE. I asked DELADE if she saw anybody carrying an assault rifle earlier in the day. DELADE stated that it was her son "Don". DELADE stated her son's truck had broken down across the street the night before and that he had retrieved his rifle from it and then borrowed her car to go get parts to fix the truck. DELADE's vehicle is a maroon Ford Taurus bearing PA registration HPR4685. DELADE then called her son and allowed me to talk to him. The man on the phone identified himself as Don DELADE. I asked DELADE if he was walking on SR 390 earlier with a rifle. DELADE stated that it was him. I asked DELADE when he would be back home and he notified me that he was going back to his broke down truck and would be there in 25 minutes.
>
> Approximately 30 minutes later, Cpl. Norman STRAUSS stopped DELADE in his mother's vehicle at the entrance of the Sky View Lakes development. DELADE identified himself and provided his PA driver's license as a form of

ID. A records check through CLEAN/NCIC revealed that the state of Florida had an active warrant for DELADE, making him a fugitive from justice. The warrant was issued by the Escambia County Sheriff's Office. The underlying charge against DELADE was Resisting an Officer without Violence. The warrant was confirmed (NIC# W505599776).

DELADE was advised on his Miranda Warnings, which he acknowledged, and was again asked if it was him walking on SR 390 with a rifle earlier in the day. DELADE confirmed that it was him. I asked DELADE where the rifle was and he told me that it was in the trunk of the car. A search warrant was obtained and the rifle, an AR 15 rifle, was discovered in the trunk like DELADE said. DELADE also informed me that he had other weapons at his house in a gun safe. Another warrant was obtained and multiple firearms were discovered in the safe, just as DELADE advised.

(Affidavit of Probable Cause, Doc. 55, Ex. N, at 5).

Thus, the facts supporting probable cause for the issuance of the complaint on September 17, 2014, were clearly known to the officers as of September 13, 2014. There was therefore probable cause to arrest DeLade on a charge of violation of 18 Pa.C.S.A. § 6105. Under the Supreme Court's decision in *Devenpeck v. Alford*, Plaintiff's suit for false arrest and malicious prosecution fails in the face of the probable cause for his arrest on the charges under § 6105.

Further, the Supreme Court's decision in *Devenpeck* supports the Magistrate Judge's reliance upon the cases cited in the R&R for the proposition that "[p]robable cause need only exist as to any offense that could be charged under the circumstances [in order to defeat a false arrest or malicious prosecution claim]." (Doc. 59, at 12). Plaintiff contends that the decision in *Edwards v. City of Philadelphia, supra*, does not establish what the Magistrate Judge has determined that it establishes, *i.e.* that if probable cause exists as to a

charge that was not filed but could have been then there can be no claim for false arrest.

Plaintiff's argument misses the mark for two reasons. First, the decision in *Edwards* is consonant with the R&R's statement of the law. *See Edwards*, 860 F.2d at 576. ("The existence of probable cause, therefore, justified the arrest – and defeats [Plaintiff's] claim of false arrest – even if there was insufficient cause to arrest on the aggravated assault claim alone."). Here, even if probable cause were lacking as to the arrest prior to requisition charge brought against DeLade under 42 Pa.C.S.A. § 9134, probable cause was clearly present to support the arrest of DeLade here under 18 Pa.C.S.A. § 6105 – fugitive not to possess a firearm. Second, Plaintiff's statement in his objections that under *Edwards* "the clear language of the case law establishes that if probable cause exists as to at least one charge filed, then a false arrest claim does not lie" (Doc. 62, at 14) presents a statement of law that does not support his claim. Here, there is clearly probable cause for the charge brought against the Plaintiff under 18 Pa.C.S.A. § 6105(a)(1) and (c)(1) so that even if probable cause were lacking on the arrest undertaken with respect to 42 Pa.C.S.A. § 9143 Arrest before requisition, Plaintiff's false arrest and malicious prosecution claim must be rejected. The decision in *Barna v. City of Perth Amboy*, *supra*, was properly cited and relied upon by the Magistrate Judge in issuing the R&R in this case. In *Barna*, the Court of Appeals stated:

> The test for an arrest without probable cause is an objective one, based on "the facts available to the officers at the moment of arrest." *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964); *Edwards v. City of Philadelphia*, 860 F.2d 568, 571 n. 2 (3d Cir.1988). Evidence that may prove

insufficient to establish guilt at trial may still be sufficient to find the arrest occurred within the bounds of the law. *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). As long as the officers had some reasonable basis to believe Mr. Barna had committed a crime, the arrest is justified as being based on probable cause. Probable cause need only exist as to any offense that could be charged under the circumstances. *Edwards v. City of Philadelphia*, 860 F.2d at 575-76.

42 F.3d at 819.

Likewise, in *Wright v. City of Philadelphia*, the Third Circuit cited approvingly to its

decision in *Barna* in the following passage:

Importantly for this case, it is irrelevant to the probable cause analysis what crime a suspect is eventually charged with, *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) ("Probable cause need only exist as to any offense that could be charged under the circumstances."), or whether a person is later acquitted of the crime for which she or he was arrested, *DeFillippo*, 443 U.S. at 36, 99 S.Ct. 2627; *see also Devenpeck*, 125 S.Ct. at 594 ("The rule that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest is inconsistent with [ ] precedent.").

409 F.3d at 602.[2]

---

[2]  *See also, Damico v. Harrah's Philadelphia Casino & Racetrack*, 674 F.App'x 198, 201 (3d Cir. 2016) ("An arrest is justified based on probable cause so long as the arresting officer 'had some reasonable basis' to believe that the detainee had committed a crime.")(citing *Barna*, 42 F.3d at 819); *Bell v. City of Harrisburg*, 457 F.App'x 164 (3d Cir. 2012):

To prevail on a false arrest claim under the Fourth Amendment, a plaintiff must show that the police made an arrest without probable cause. *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994). The test for an arrest without probable cause is an objective one, based on "the facts available to the officer at the moment of arrest." *Id.* Probable cause need only exist as to any offense that could be charged under the circumstances. *Id.* The probable cause inquiry looks to the totality of the circumstances. *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005).

457 F.App'x at 166.

Similarly, in *Butler v. City of Philadelphia*, *Barna* and *Devenpeck* are again cited approvingly as follows:

> Nor did the District Court err in granting summary judgment to Officers Barr and Borrero on Butler's claims of false arrest and false imprisonment. To prevail under either theory, Butler was required show that the officers arrested him without probable cause. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634-36 (3d Cir. 1995). An arrest is performed with probable cause if "at the moment the arrest was made the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005) (quotation marks, alterations omitted). "Probable cause need only exist as to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994); *see also Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).

614 F.App'x 69, 71 (3d Cir. 2015).

In light of the case law cited herein, the Magistrate Judge correctly concluded:

> Thus, while DeLade urges us to focus upon what he regards as fraudulent manipulation of the extradition process by Defendant Cargan, those factually disputed allegations of manipulation simply cannot support a freestanding false arrest or malicious prosecution claim where ample probable cause existed to charge DeLade with a separate offense and he was, in fact, charged with that offense. In these circumstances, DeLade's Fourth Amendment false arrest and malicious prosecution claims fail as a matter of law, *see Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994), and the defendant may also assert the defense of qualified immunity. *Wright v. City of Philadelphia,* 409 F.3d 595, 604 (3d Cir. 2005).

(Doc. 59, at 24-25).

Finally, with respect to Plaintiff's objections regarding the recommendation of the Magistrate Judge that summary judgment be granted on Plaintiff's Fourth Amendment

claims, the undisputed facts of record show that with respect to the charge of being a Fugitive in Possession of a Firearm, 18 Pa.C.S.A. § 6105, DeLade pleaded guilty to the lesser charge of disorderly conduct under 18 Pa.C.S.A. § 5503(a)(4) and was sentenced accordingly. (Doc. 44, at ¶ 11).

Though this Court has chosen to address the probable cause element of Plaintiff's claims for false arrest and malicious prosecution, the Court of Appeals in *Kossler v. Crisanti,* has declared that "district courts need not reach the probable cause element unless they first make a finding of favorable determination after examining whether the proceeding as a whole indicates the innocence of the accused with respect to the conduct underlying all of the charges. Only if the favorable determination element is satisfied under this test must a district court engage in an analysis of the probable cause element . . . ." 564 F.3d 181, 194 (3d Cir. 2009)

Under the analytical formula set forth in *Kossler,* the Court finds that DeLade's plea of guilty to disorderly conduct under 18 Pa.C.S.A. § 5503(a)(4) bars the Plaintiff's malicious prosecution claim. In *Kossler,* the plaintiff, after an altercation with an off-duty police officer who was working an off-duty detail, was charged with aggravated assault and public intoxication. The plaintiff was acquitted on the charges of aggravated assault and public intoxication but convicted of disorderly conduct. Kossler then filed a suit against the police officer and his off-duty employer alleging a number of state and federal claims, including excessive force, false arrest, and malicious prosecution pursuant to 42 U.S.C. § 1983. The

District Court granted summary judgment in favor of the off-duty employer on the malicious

prosecution and false arrest claims brought under federal law and state law. *Kossler*, 564

F.3d at 185. The parties ultimately stipulated to an entry of judgment in favor of the off-duty

police officer on all claims, *id.* at 186, and an appeal by Kossler followed.

In affirming the District Court, the Court of Appeals framed the issue before it as:

> Whether a conviction for disorderly conduct and a contemporaneous acquittal for aggravated assault and public intoxication under the relevant Pennsylvania statutes constitute a favorable termination of the state criminal proceeding against the plaintiff whose intentional physical contact against a municipal police officer underlies all three offenses.

*Id.* at 183. The Court held that Kossler's acquittal on the charges of aggravated assault and

public intoxication did not constitute a "favorable termination" where he was also convicted

on the charge of disorderly conduct.

The Court, having set forth the elements of malicious prosecution under § 1983,

explained:

> For Kossler to prevail, he needed to satisfy each of the elements of malicious prosecution, and thus the District Court's ruling that Kossler failed to establish the second element – the favorable termination of his underlying criminal proceeding – was fatal to his claims. Our agreement with the District Court's ruling on this element suffices to affirm the District Court's order in toto.

*Id.* at 186-187. The Court continued:

> The purpose of the favorable termination requirement is to avoid "the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Heck v. Humphrey*, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (alteration in original) (internal quotation

marks omitted). Consistent with this purpose, we have held that a prior criminal case must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the favorable termination element. *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002); *see also Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005) (holding that expungement under the Accelerated Rehabilitative Disposition program was not a favorable termination because the program "imposes several burdens upon the criminal defendant not consistent with innocence"). Accordingly, a malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner not indicative of the innocence of the accused.

*Id.* at 187.

The Court explained that "[t]he favorable termination element is not categorically satisfied whenever the plaintiff is acquitted of just one of several charges in the same proceeding. When the circumstances – both the offenses as stated in the statute and the underlying facts of the case – indicate that the judgment as a whole does not reflect the plaintiff's innocence, then the plaintiff fails to establish the favorable termination element." *Id.* at 188. Accordingly, the Court found that the judgment rendered at Kossler's bench trial on the criminal charges against him "did not reflect Kossler's innocence on the night of the fight" and "[a]s a result, Kossler's acquittal on the aggravated assault and public intoxication charges cannot be divorced from his simultaneous conviction for disorderly conduct when all three charges arose from the same course of conduct." *Id.* at 189.

In this case, DeLade pleaded guilty to disorderly conduct under 18 Pa.C.S.A. § 5503(a)(4). Section 5503(a) provides as follows:

A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he .

. . creates a hazardous or physically offensive condition by any act which
serves no legitimate purpose of the actor.

18 Pa.C.S.A. § 5503(a)(4).

Here, unlike the facts in *Kossler*, DeLade was not acquitted of any charge but rather
pleaded guilty to disorderly conduct in creating "a hazardous or physically offensive
condition by any act which serves no legitimate purpose of the actor." These charges arose
from the facts which formed the basis for probable cause to arrest DeLade for violation of 18
Pa.C.S.A. § 6105(a)(1) and (c)(1) which barred a fugitive from possessing a firearm in the
Commonwealth. Plaintiff's plea of guilty to disorderly conduct presents a further basis on
which to find that his claim for malicious prosecution must fail.

### 2. Plaintiff's Objection to the R&R's Recommendation that the Fourteenth Amendment Due Process Claims be Dismissed

The Magistrate Judge also recommended dismissal of DeLade's Fourteenth
Amendment due process claim, quoting *Graham v. Connor*:

> [b]ecause the Fourth Amendment provides an explicit textual source of
> constitutional protection against this sort of physically intrusive governmental
> conduct, that Amendment, not the more generalized notion of "substantive
> due process" must be the guide for analyzing these claims.

(Doc. 59, at 25)(quoting *Graham*, 490 U.S. at 395). The R&R concluded that because
DeLade's claims under the "guiding Fourth Amendment benchmarks" had been found
"wanting", Plaintiff could not "save these specific constitutional claims by resort to the more
general rubric of recasting them as due process allegations." (*Id.* at 26). In his objections,
Plaintiff asserts that "[i]n reviewing Plaintiff's due process claim for manipulation and

36

falsification of evidence, Magistrate Judge Carlson ignored caselaw in the Third Circuit that holds that a Fourteenth Amendment due process claim is available when evidence is fabricated, even if there exists a separate Fourth Amendment Claim", citing to *Halsey v. Pfeiffer*, 750 F.3d 273, 279 (3d Cir. 2014) and *Black v. Montgomery County*, 835 F.3d 358 (3d Cir. 2016). (Doc. 62, at 20). Plaintiff concludes that "Magistrate Judge Carlson completely ignored [*Halsey* and *Black*], presumably because he viewed the evidence in the light most favorable to Defendant and drew all reasonable inferences from the evidence in the light most favorable to Defendant, all in contravention of the well-established summary judgment standards . . ." (*Id.* at 23).

Despite Plaintiff's apparent belief that *Halsey* and *Black* somehow clearly establish that he may pursue a Fourteenth Amendment claim separate from his Fourth Amendment claims, such a conclusion is not obvious and requires this Court to potentially expand the holdings of the afore-mentioned Third Circuit cases and determine an unresolved question of law within this Circuit. A review of the case law reveals that the law is currently in a state of flux with respect to the reach of the Fourteenth Amendment's due process provisions in the context of a claim of unlawful detention only, an issue that has yet to be specifically determined by the Supreme Court or a significant number of Circuit Courts. Importantly, the Third Circuit has never explicitly found that a pre-trial detainee has a stand-alone Fourteenth Amendment due process claim on the basis of fabrication of evidence.

In *Halsey v. Pfeiffer*, the plaintiff had been convicted of the torture and murder of two small children. He was released after 22 years from prison "because it had been established beyond all doubt that he had not committed the offenses." 750 F.3d 273, 278 (3d Cir. 2014). The Circuit observed that "we hardly can conceive of a worse miscarriage of justice." *Id.* The Court held "that if a defendant has been convicted at a trial at which the prosecution has used fabricated evidence, the defendant has a stand-alone claim under section 1983 based on the Fourteenth Amendment if there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted" and, in so holding, "reject[ed] the contention that there cannot be a stand-alone Fourteenth Amendment claim predicated on the fabrication of evidence." *Id.* at 294. Nonetheless, the *Halsey* Court made clear that it was not "decid[ing] today whether pre-trial detentions can implicate constitutional rights beyond the Fourth Amendment inasmuch as we are dealing with injuries that go far beyond the injury to Halsey attributable to his pre-trial detention." *Id.* at 293.

The Court of Appeals thus reversed the District Court's grant of summary judgment to the defendants and remanded the case to the lower court, reaffirming what it stated "has been apparent for decades to all reasonable police officers: a police officer who fabricates evidence against a criminal defendant to obtain his conviction violates the defendant's constitutional right to due process of law." *Halsey*, 750 F.3d at 279.

More recently, the Third Circuit in *Black v. Montgomery County*, expanding on the holding in *Halsey*, held that where an individual had been acquitted at trial, "a stand-alone

fabrication of evidence claim can proceed if there is no conviction." 835 F.3d 358, 369 (3d

Cir. 2016). Citing its decision in *Halsey*, the Court recognized "that not all of the plaintiff's

allegations may 'fall under the traditional definition of a Fourth Amendment malicious

prosecution claim.'" *Id.* at 369. The Court observed

> the untenable possibility "that there would not be a redressable constitutional
> violation when a state actor used fabricated evidence in a criminal proceeding
> if the plaintiff suing the actor could not prove the elements of a malicious
> prosecution case, such as the lack of probable cause for the prosecution."
> [*Halsey,* 750 F.3d at 292]. We also observed that "[w]hen falsified evidence is
> used as a basis to initiate the prosecution of a defendant, or is used to convict
> him, the defendant has been injured regardless of whether the totality of the
> evidence, excluding the fabricated evidence, would have given the state actor
> a probable cause defense in a malicious prosecution action that a defendant
> later brought against him." *Id.* at 289. As a result, we rejected the defendants'
> argument that claims of evidence fabrication must be tied to malicious
> prosecution cases.

835 F.3d at 369. The Circuit thus explained:

> an acquitted criminal defendant may have a stand-alone fabricated evidence
> claim against state actors under the due process clause of the Fourteenth
> Amendment if there is a reasonable likelihood that, absent that fabricated
> evidence, the defendant would not have been criminally charged. In *Halsey*,
> we required a "reasonable likelihood" that a defendant would not have been
> convicted absent the fabricated evidence, and that standard was merely
> based on principles of causation. 750 F.3d at 294 n.19. The "reasonable
> likelihood" standard we employ simply requires that a plaintiff draw a
> "meaningful connection" between her particular due process injury and the
> use of fabricated evidence against her.

*Id.* at 371-372. However, just as in *Halsey*, the Court in *Black* left open the question of at

what point in time a pre-trial detainee's due process claim based on fabrication of evidence

matures. As noted in *Black*:

Noting that the boundary between the Fourteenth and Fourth Amendments "is, at its core, temporal," we observed in *Halsey* that the Fourth Amendment's protection against unlawful seizure extends until trial whereas the due process of law guarantee "is not so limited as it protects defendants during an entire criminal proceeding through and after trial." *Id.* at 291. We determined, however, drawing a precise line between claims invoking the two rights was unnecessary in *Halsey* (as in the present case) because the fabrication of evidence allegedly infected the entirety of the criminal proceeding, from securing the indictment through trial. *Id.; see also id.* ("Wherever the boundary between the Fourth and Fourteenth Amendment claims lies, it is in the rear view mirror by the end of trial, when Fourth Amendment rights no longer are implicated.").

*Id.* at 369 n. 11. *See also, Halsey*, 750 F.3d at 291 ("In the future we may be called on to chisel more finely the lines between the two claims – thus we might be required to decide precisely when an unlawful seizure ends and a due process violation begins. But we are spared the burden of doing so now because the fabricated confession obviously injured Halsey long after he suffered an injury attributable to his pre-trial detention.") (internal quotations and brackets omitted).

*Halsey* and *Black* thus make clear that a plaintiff may bring a stand-alone due process claim separate from a Fourth Amendment claim. However, in both cases, the plaintiff had undergone extensive criminal proceedings. Nonetheless, while the Third Circuit has not clearly delineated at what point in a criminal proceeding a Fourteenth Amendment due process claim on the basis of fabrication of evidence may be viable, the Seventh Circuit very recently squarely addressed this issue. In *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019), the Seventh Circuit stated that it had recently "explained that all § 1983 claims for wrongful pretrial detention – whether based on fabricated evidence or some other

defect – sound in the Fourth Amendment", (citing *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018))(petition for cert. filed Feb. 22, 2019)).  Thus, the Seventh Circuit explained that "the Fourth Amendment, not the Due Process Clause, is the source of the right in a § 1983 claim for unlawful pretrial detention, whether before or after the initiation of formal legal process" and accordingly, "[t]he injury of wrongful pretrial detention may be remedied under § 1983 as a violation of the Fourth Amendment, not the Due Process Clause." *Lewis*, 914 F.3d at 479.  The Court in *Lewis* "close[d] by noting the important point that a claim for wrongful pretrial detention based on fabricated evidence is distinct from a claim for wrongful *conviction* based on fabricated evidence: *Convictions* premised on deliberately fabricated evidence will always violate the defendant's right to due process" and that the Court's holding only "deal[s] here only with a claim of wrongful *pretrial detention*, not a claim of wrongful *conviction*." *Id.* at 914 F.3d 479-480 (emphasis in original).

Although the Seventh Circuit's opinions in *Lewis* and *Manuel* provide this Court with persuasive authority that a claim such as DeLade's, wherein a pretrial detainee was arrested, charged with a crime which may have occurred as the result of purportedly fabricated evidence, and was detained for a period of four days prior to being charged for other crimes for which there was probable cause, may not properly be brought under the Fourteenth Amendment, this Court declines to follow the Seventh Circuit's precedent at this time.  Preliminarily, the Seventh Circuit's position, and emphasis on a "wrongful conviction" as the basis for the stand-alone Fourteenth Amendment due process violation appears to

set forth a more limited approach than that of the Third Circuit whereas this Circuit has held

that a stand-alone fabrication of evidence claim can proceed even in the absence of a

conviction, *Black*, 835 F.3d at 369. In addition, while the Third Circuit has declined to

"chisel more finely the lines between . . . precisely when an unlawful seizure ends and a due

process violation begins", *Halsey*, 750 F.3d at 291, it has repeatedly used language that

suggests a stand-alone due process claim may lie even where the plaintiff never proceeded

to trial. *See Halsey*, 750 F.3d at 289 ("To the best of our knowledge, every court of appeals

that has considered the question of whether a state actor has violated the defendant's right

to due process of law by fabricating evidence to *charge* or convict the defendant has

answered the question in the affirmative")(emphasis added)(collecting cases and citing

approvingly to *Devereaux v. Abbey*, 263 F.3d 1070, 1074-1075 (9th Cir. 2001)("there is a

clearly established constitutional due process right not to be subjected to criminal charges

on the basis of false evidence that was deliberately fabricated by the government.")). As

explained by the Court in *Black*,

> Our reasoning in *Halsey* makes no distinction between fabricated evidence
> leading to a wrongful conviction and *wrongful criminal charges.* For example,
> we repeatedly referred to the injury of falsified evidence leading to wrongful
> initiation of prosecution. *See, e.g.,* 750 F.3d at 289 ("When falsified evidence
> is used *as a basis to initiate the prosecution of a defendant,* or is used to
> convict him, the defendant has been injured...." (emphasis added)); *id.* at 294
> n.19 ("[I]f fabricated evidence is used *as a basis for a criminal charge that
> would not have been filed without its use* the defendant certainly has suffered
> an injury."). Furthermore, when we explained in *Halsey* why the injury violated
> due process, we focused on the corruption of the trial process. *See id.* at 293
> ("[W]e think it self-evident that a police officer's fabrication and *forwarding to
> prosecutors of known false evidence* works an unacceptable corruption of the

*truth-seeking function* of the trial process." (quotation marks omitted and emphasis added)). It is challenging to square away *Halsey's* broad language about "law and fundamental justice," *id.* with a requirement that one be convicted for a fabricated evidence claim to be viable; the harm of the fabrication is corrupting regardless of the outcome at trial or the particular time in the proceeding that the corruption occurs. We stressed in *Halsey* that we were not suggesting that "there is nothing wrong with the fabricating of evidence if it does not affect the final verdict." *Id.* at 295 n.20.

*Black*, 835 F.3d at 370-371 (underline added).

Although the present case presents this Court with an unsettled issue of law never squarely addressed by the Third Circuit, this Court finds that the Third Circuit's language leaves open a viable claim for a pre-trial detainee to bring a Fourteenth Amendment due process claim for fabrication of evidence where the harm of the fabrication corrupts the trial process at any stage, *i.e.* regardless of the particular time in the proceeding that the corruption occurs. While this Court recognizes the Seventh Circuit's holding, in the absence of similar case law by other Circuits,[3] and in applying the Third Circuit's language addressing when a due process claim may lie for fabrication of evidence, it appears that DeLade may have a viable due process claim, despite never proceeding to trial.

---

[3] In fact, it appears there may be a split among the Circuit Courts as to when a Fourteenth Amendment due process claim for fabrication of evidence may first be viable. In *Caldwell v. City and County of San Francisco*, 889 F.3d 1105 (9th Cir. 2018), the plaintiff spent almost 20 years in prison for murder, and after being released due to a successful habeas corpus petition, brought a § 1983 claim against the city and county of San Francisco and three city and county police officers, alleging that the officers fabricated evidence against him during their investigation. Although the facts of that case clearly differ from those presently before this Court, the facts in *Caldwell* somewhat mirror those in *Halsey*, and in setting forth the applicable law, the Ninth Circuit explained that, "[a]s to what constitutes an injury, a § 1983 plaintiff need not be convicted on the basis of the fabricated evidence to have suffered a deprivation of liberty – *being criminally charged is enough*," 889 F.3d at 1115 (emphasis added).

The Court thus turns to whether genuine disputes of material facts exist such that Plaintiff's Fourteenth Amendment claim may survive summary judgment.

In *Halsey*, after cataloguing the falsified evidence used to obtain the conviction of Halsey, the Court turned "to the legal question of whether a state actor engages in actionable conduct simply by fabricating evidence." 750 F.3d at 289. The Court of Appeals explained:

> When falsified evidence is used as a basis to initiate the prosecution of a defendant, or is used to convict him, the defendant has been injured regardless of whether the totality of the evidence, excluding the fabricated evidence, would have given the state actor a probable cause defense in a malicious prosecution action that a defendant later brought against him.

*Id.*

While noting that the Fourth Amendment "forbids a state from detaining an individual unless the state actor reasonably believes that the individual has committed a crime – that is, the Fourth Amendment forbids a detention without probable cause," the Court described this protection against unlawful seizures as extending "only until trial." *Id.* Turning to the guarantee of due process under the Fourteenth Amendment, the Court then explained: "[t]he guarantee of due process of law, by contrast, is not so limited as it protects defendants during an entire criminal proceeding through and after trial." *Id.* at 291. Accordingly, the Court declared:

> [w]e emphatically reject the notion that due process of law permits the police to frame suspects. Indeed, we think it self-evident that "a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.'

*Id.* at 293.

Moreover, the *Halsey* Court made clear that "[a] rule of law foreclosing civil recovery against police officers who fabricate evidence, so long as they have other proof justifying the institution of the criminal proceedings against a defendant, would not follow [§ 1983]'s command or serve its purpose." *Id.* at 293.

Relying on *Halsey*, the Court in *Black* explained that to successfully bring a due process claim for fabrication of evidence, a criminal defendant:

> may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged. In *Halsey*, we required a "reasonable likelihood" that a defendant would not have been convicted absent the fabricated evidence, and that standard was merely based on principles of causation. 750 F.3d at 294 n.19. The "reasonable likelihood" standard we employ simply requires that a plaintiff draw a "meaningful connection" between her particular due process injury and the use of fabricated evidence against her. See *id.; see also Lamont v. New Jersey*, 637 F.3d 177, 185 (3d Cir. 2011)("Like a tort plaintiff, a § 1983 plaintiff must establish both causation in fact and proximate causation.").

> Aside from the causation requirement, there are other hurdles facing a plaintiff alleging a due process violation for fabrication of evidence. For instance, as we cautioned in *Halsey*, a civil plaintiff's fabricated evidence claim should not survive summary judgment unless he can demonstrate that the fabricated evidence "was so significant that it could have affected the outcome of the criminal case." *See Halsey*, 750 F.3d at 295. In addition, there is a notable bar for evidence to be considered "fabricated." We have noted that "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Id.* There must be "persuasive evidence supporting a conclusion that the proponents of the evidence" are aware that evidence is incorrect or that the evidence is offered in bad faith. *Id.* For these reasons, we reiterate that "we expect that it will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case." *Id.* at 295.

835 F.3d at 371-372.

Thus, in applying the tenets of *Halsey* and *Black*, for Plaintiff to overcome Defendant's motion for summary judgment with respect to Plaintiff's Fourteenth Amendment due process claim, Plaintiff must show that there are triable issues of fact to demonstrate: (1) a reasonable likelihood that, absent that fabricated evidence, DeLade would not have been criminally charged – in other words, Plaintiff must draw a "meaningful connection" between his particular due process injury and the use of fabricated evidence against him; (2) the evidence was "fabricated" such that there is persuasive evidence supporting a conclusion that Cargan was aware that the evidence was incorrect or offered the evidence in bad faith; and (3) that the fabricated evidence was so significant that it could have affected the outcome of the criminal case.

Here, Plaintiff, in his reply brief in support of his objections, argues the following in support of this Fourteenth Amendment claim: "DeLade has alleged that evidence was fabricated against him when Defendant provided false information (that DeLade was a convicted felon) and caused Florida to change its extradition status to full extradition for the sole purpose of assisting Defendant in holding DeLade on an unrelated matter, while at the same time advising Defendant that Florida would not come to Pennsylvania to extradite DeLade to Florida." (Doc. 68, at 4). Broadly speaking, the issue that must therefore be addressed in determining whether to grant summary judgment as to Plaintiff's Fourteenth Amendment due process claim is whether fabricated evidence was used as a basis for a

criminal charge against DeLade that would not have been filed without its use that deprived DeLade of his liberty.

As previously noted, the following facts are undisputed. Defendant Cargan initiated a criminal history search for DeLade through the Commonwealth Law Enforcement Assistance Network ("CLEAN"), which is linked to the National Crime Information Center ("NCIC"). (Doc. 44, at ¶ 3). The search of the CLEAN system showed that DeLade had an outstanding warrant in the state of Florida and that the warrant had an extradition status of "no extradition." (*Id.* at ¶ 5). Defendant Cargan called the Escambia County Sheriff's Department in Florida to request that the extradition status be changed to "full extradition", and the extradition status was changed by Escambia County Lieutenant Randy Blake to full extradition (*Id.* at ¶¶ 6, 8). It is undisputed as well that it is the decision of the law enforcement agency, in this case the Escambia County Florida Office of the Sheriff, who maintains the warrant, to decide if and where they want to seek extradition and to change the extradition status of a warrant. (*Id.* at ¶ 7).

In addition, the records of the Escambia County Sheriff's Office, whose authenticity no party disputes, show that Escambia County did not intend to extradite DeLade, notwithstanding its change in the NCIC records as to DeLade's warrant from no extradition to full extradition. An email by Julie Weaver, an employee of the Escambia County Sheriff's Office, on September 13, 2014 at 11:54 a.m. states:

> Ref W/M Donald Delade DOB/042785....Per conversation with Lt. Blake, hit was modified to show full extradition, even though it is a misdemeanor

warrant, due to a request from Officer John Cargan #7493 with Pennsylvania State Police 215-397-7978. Subject is person of interest in shooting of 2 State Troopers, and needed something to hold him on until they can investigate further. Per Lt. Blake, hold will be placed, but will not pick up

(Doc. 55, Ex. H, at 5).

Also in the record is a handwritten statement on Escambia County letterhead, dated 9/15/14, which states:

Per Lt. Blake warrant placed in full extradition due to subject being a person of interest in shooting of 2 State Troopers – PA  HOLD ONLY!  We will not extradite – local charges – convicted felon.  Jail 570-253-2621.

(*Id.* at 2).  The document then contains an entry dated 9/19/14 which states: "Per Wayne [County] Jail, PA, subject was released yesterday." (*Id.*).

Plaintiff has also submitted excerpts from the deposition of Lieutenant Randy Blake of the Escambia County Sheriff's Office.  Lieutenant Blake, when asked whether he changed the warrant from no extradition to full extradition "because a representative of the Pennsylvania State Police asked you to on that day," answered: "Sir, all I know is, that date I changed the extradition limits based upon the phone call I received." (Dep. of Blake, at 17:12-19).  Lieutenant Blake also testified that he told Shea and Susan, two individuals in his office, that Florida would not extradite DeLade.  He then testified:

Q:      What did you tell – what did you tell the trooper from Pennsylvania State Police on the 13th regarding that issue?

A:      Sir, if I changed the limits to include Pennsylvania, and being it's a misdemeanor warrant, we would not have went that far to pick him up.

Q:      Again, you changed it to accommodate the Pennsylvania State Police; correct?

A:      Yes, sir.

(*Id.* at 22:9-23).

Lieutenant Blake, when asked why he honored this request, stated:  "[w]ell, like I say, from the notes, he was a person of interest in the homicide that occurred, and they wanted to detain him."  (*Id.* at 33:19-24).

Lieutenant Blake also confirmed the authenticity and accuracy of a telephone recording produced at his deposition where he returned the call to Frank Tunis, one of Plaintiff's attorneys, wherein Blake stated:

> We spoke yesterday in reference to Donald DeLade, and I've gone back and researched his information.  We did have a warrant on him, and we were contacted by the Pennsylvania State Trooper's Division in reference to Mr. DeLade being a suspect in a possible shooting, and they were wanting to hold him.  Therefore, we changed our extradition limits to cover the area, the State of Pennsylvania.  And, I mean, I guess he was taken into custody because our notes say that he was released I think two or three days after – let me see. Hang on a second.  It looks like it was four days later he was released from custody.  So if you have any questions, give me a call.

(*Id.* at 18:23-19:11).

In contrast, when Cargan was asked during his deposition whether he "call[ed] Florida, the Escambia County Sheriff's Office, and ask[ed] them to modify their extradition records for Mr. DeLade", Cargan responded, "I did call the department, yes I did, to confirm the warrant" but that he "did not" ask them to change the warrant and "in this case" there was no need to "[a]sk anybody for anything."  (Dep. of Cargan, at 21:10-25).  Cargan further

testified that he did not recall anyone from "PACIC" (Pennsylvania Criminal Intelligence Center) telling him whether the warrant was extraditable, and that he did not ask Lieutenant Blake if the warrant was extraditable. (*Id.* at 23:13-24:21).

Escambia County's decision not to extradite DeLade was formally communicated to the District Attorney of Wayne County on September 17, 2014, from Shea Goodale of the Escambia County Sheriff's Office where, by fax transmittal, the Wayne County District Attorney was notified:

> Remarks: Above subject is in your custody. We show we have an active warrant on this subject at this time. However, the warrant is for a misdemeanor VOP and will **not** extradite from Pennsylvania. If you have any question, I can be reached at the above number.

(Doc. 55, Ex. H, at 3) (emphasis in original).

There are, therefore, material disputes of fact arising from the testimony of Defendant DeLade, Lieutenant Blake, and the Escambia County Sheriff's Office's documents as to whether Defendant Cargan asked the Escambia County Sheriff's Office to change the outstanding warrant against DeLade from no extradition to full extradition and, if so, whether Cargan knew that despite this change, no effort would be made by Escambia County to extradite DeLade on the charge for which he was initially arrested: Arrest Prior to Requisition pursuant to 42 Pa.C.S.A. § 9143.

The analysis, however, must be taken further in order to determine whether there are triable disputes of fact as to whether Defendant Cargan, if he knew that Escambia County would not extradite DeLade notwithstanding the change in the warrant from no extradition to

full extradition, procured DeLade's arrest under 42 Pa.C.S.A. § 9143 by withholding this information from those Pennsylvania State Troopers who arrested DeLade as a fugitive sought by the state of Florida for whom Florida sought full extradition. That is to say, since the basis for an arrest under § 9143 is the arrestee's status as a fugitive from justice in another state as to whom that state seeks extradition, a triable issue of fact exists as to whether DeLade would have been arrested had the arresting officers known what Cargan arguably knew, *i.e.* that the state of Florida would not extradite DeLade.

Troopers Bryan Fedor and Steven Polishan signed the sworn affidavit of probable cause for the September 13, 2014, arrest of DeLade on the charge of Arrest Prior to Requisition. The affidavit of probable cause stated, in part, that the events of September 13, 2014, began when the State Police received information about a white male walking along SR 390 carrying an assault rifle. Of particular significance here, the affidavit of probable cause stated:

> After speaking with DELADE via telephone Tpr. OLIVER was contacted by Tpr. CARGAN, PSP Fugitive Unit, who informed him that DELADE had an extraditable warrant entered into NCIC out of the state of Florida.

(Doc. 48, Ex. C). The affidavit of probable cause further detailed:

> On 9/13/14 a CLEAN/NCIC check was performed on DeLade, date of birth [redacted] and it indicated that there was an active NCIC entry for the accused as a fugitive from the State of Florida. DELADE'S warrant was entered into NCIC on 11/24/08 by the Escambia County Sheriff's Office. The entry indicated that there was *full extradition* and the offense DELADE was wanted for was Resisting an Officer without Violence. Troop R Honesdale Dispatcher (GIAMBER) received verbal confirmation from the Escambia County Sheriff's Office of the full extradition warrant for DELADE.

(*Id.*)(emphasis added).  In the actual Police Criminal Complaint itself, in the section entitled

"Acts of the accused associated with this Offense" it is written:

> In that the above named defendant stands charged in the courts of the State
> of Florida by the Escambia County Sheriff's Office.  The NCIC entry indicated
> that there was full extradition and the offense Donald DELADE is wanted for
> was Resisting an Officer without Violence.

(*Id.*).

Arresting Officer Fedor testified that the charge he filed against DeLade, Arrest Prior

to Requisition, was charged "with the expectation" that Florida would extradite DeLade:

> Q:     Okay.  So the charge you filed against Mr. DeLade, the arrest prior to
>        requisition, you're charging that with the expectation that Florida is
>        coming to get him; right?
>
> A:     That is correct.
>        . . . .
>
> Q:     I'm going to ask you this one more time.  Had you known – listen to my
>        question – had you known that Florida wasn't coming to get him before
>        you filed the criminal complaint against Mr. DeLade, would you have
>        filed it?
>
> A:     There would have been more contact with the District Attorney in that
>        matter or the agency that put it in.

(Dep. of Fedor, at 18:9-13; 18-25).  The excerpts from Trooper Fedor's deposition leave

unanswered whether, had he known what Cargan arguably knew, *i.e.* that Escambia County

would not extradite DeLade, he still would have filed the complaint seeking Arrest Prior to

Requisition under 42 Pa.C.S.A. § 9134.

Officer Brandon Allis, a State Police criminal investigator, when deposed, testified that where persons are detained and the state which issued the warrant for extradition indicates that they do not wish to extradite, "[g]enerally we would release them after a confirmation is sent and received," and further stated that if the state which has issued the warrant indicates that they do not wish to extradite, "in the cases that I've been involved with -- . . . we have released them."  (Dep. of Allis, at 8:14-17; 8:23-9:2).

Corporal William Sweeney, one of the troopers who arrested DeLade, testified that in matters of extradition, the procedure with respect to verifying an outstanding warrant for extradition is that "[y]ou make contact with the person in the form of a hit request or a hit confirm."  He further explained that "[t]he database that originally has the warrant and they would notify you whether they want the person or not at that point." (Dep. of Sweeney, at 15:3-8).  He then testified:

> Q:      And what happened if the person you contact says they didn't want the person?
>
> A:      You would let the person go.
>
> Q:      Okay.  And if you knew that that particular jurisdiction had no plans to come and extradite that person back to the state, you've got to let him go; right?
>
> A:      I would let him go, yeah.
>
> Q:      Has that ever happened to you in the past?
>
> A:      Yes.

(*Id.* at 15:9-18).  Trooper Sweeney later testified:

Q: And if people in Florida told Trooper Cargan that they weren't coming to get him, you would have expected Trooper Cargan to tell you guys that before you arrested Mr. DeLade for being a fugitive; right?

A: I haven't seen Trooper Cargan up to that point, so I don't – I would expect him to tell me that, yes, but I haven't seen him up to that point.

Q: That's significant, right? If you were arresting somebody for a warrant out of another state, you would want to know if that state is coming to get him or not; right?

A: Yes, I would verify that and confirm the warrant.

(*Id.* at 32:7-19). Then, Trooper Sweeney testified:

Q: If you knew they didn't want him and weren't going to extradite him, barring some other offense or some other charge you would hold him on, you would let him go; right?

A: Correct.

(*Id.* at 35:17-21).

The statements contained in the affidavit of probable cause issued by Troopers Fedor and Polishan for the arrest of DeLade pursuant to 42 Pa.C.S.A. § 9143 together with the testimony of arresting officer Sweeney and the testimony of the other State Police officers discussed herein suffices to establish a material dispute of fact as to whether DeLade would have been arrested had the arresting officers known what Cargan arguably knew, that is that the state of Florida would not extradite the Plaintiff. For these reasons, summary judgment must be denied with respect to DeLade's Fourteenth Amendment due process claim. As stated in *Black* at 370, "[i]f fabricated evidence is used as a basis for a

criminal charge that would not have been filed without its use the defendant certainly has suffered an injury."

While the holdings in *Halsey* and *Black* were limited to persons who had either been convicted or acquitted and who thereafter filed suit alleging that they were victims of prosecutions which were based upon fabricated evidence, the reasoning in both cases strongly suggests that the protections afforded by the substantive due process protections of the Fourteenth Amendment would apply as well at the pretrial detention phase where, as here, a triable issue of fact exists as to whether DeLade was arrested as a step incident to extradition when, in fact, the state of Florida may have, per Lt. Blake, made clear to Cargan that it would not extradite DeLade. Whether Cargan knew, and then deliberately withheld, that information from the arresting officers in this case and whether the arresting officers, had they known that Florida would not extradite DeLade, would nonetheless have charged and arrested Plaintiff, all present issues for trial.

Here, the Court's analysis does not turn on Cargan calling the Escambia County Sheriff's Office or even whether he requested a change in the extradition warrant status. If the record demonstrated that the only act taken by Cargan was to prevail on the Sheriff's Office to change the status of the outstanding warrant in Florida from non-extradition to full extradition, the Court would not find an issue for trial with respect to Plaintiff's Fourteenth Amendment due process claim. However, calling the Escambia County Sheriff's Office and allegedly requesting a change in the extradition status of the warrant cannot be looked at in

isolation – rather, these actions are necessarily intertwined with Cargan's actions and omissions, though admittedly in dispute, which occurred after he spoke with Lt. Blake. The potential violation of DeLade's due process rights, and the need for trial, arise from the facts of record as recounted herein as to whether Cargan knew that Florida would not extradite DeLade and then, despite having that knowledge, withheld this information from the arresting officers to whom he represented only that the warrant was for full extradition. In turn, these issues of fact generate a further, and dispositive, issue – whether the arresting officers would have charged DeLade under § 9134 had they known that Florida would not extradite DeLade.

Thus, the Court will deny Defendant's motion for summary judgment with respect to Plaintiff's stand-alone Fourteenth Amendment due process claim based on fabricated evidence. For the aforementioned reasons, triable issues of fact exist with respect to whether the evidence used against DeLade was, in fact, fabricated, that is, whether Cargan was aware that the status of the DeLade warrant as calling for "full extradition" was incorrect or whether he offered that evidence in bad faith, and whether there is a reasonable likelihood that, absent that fabricated evidence, DeLade would not have been criminally charged with Arrest Prior to Requisition (42 Pa.C.S.A. § 9134).

## C. Qualified Immunity

In Defendant's motion for summary judgment, Cargan asserts that he is "entitled to qualified immunity in connection with his actions in requesting that the extradition status of

Plaintiff's outstanding warrant be changed, because he did not violate a clearly established right." (Doc. 43, at 5).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity serves the dual purpose of holding government officials accountable when their power is exercised unreasonably and protecting those officials from "harassment, distraction, and liability when they perform their duties reasonably." *Id.* "[Q]ualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004)(Kennedy, J., dissenting)). Otherwise stated, the doctrine "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012).

In *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court articulated a two-step test to determine the appropriate application of qualified immunity. A Court must decide: (1) whether the facts alleged or shown by the

plaintiff demonstrate the violation of a constitutional right; and (2) if so, whether that right was "clearly established" at the time of the alleged violation. *Id.* at 201. Qualified immunity attaches unless the official's conduct violated such a clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). However, the *Saucier* procedure which erected a rigid framework no longer mandates that district courts decide the two prongs in any particular order. Rather, the District Court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

"Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury." *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) (citing *Johnson v. Jones*, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (qualified immunity may turn on disputed issues of fact); *Karnes v. Skrutski*, 62 F.3d 485, 491 (3d Cir.1995) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination.")).

Because the Court has granted Defendant's motion for summary judgment on Plaintiff's Fourth Amendment claims, we limit our qualified immunity analysis to Plaintiff's Fourteenth Amendment due process claim.

In undertaking the qualified immunity analysis, the Court first turns to the specific right at issue. Here, Defendant does not argue that DeLade was not deprived of his liberty interest. Rather, Defendant appears to assert that it was not clearly established that Cargan's actions "in requesting that the extradition status of Plaintiff's outstanding warrant be changed" (Doc. 43, at 5) would constitute a deprivation of DeLade's due process rights. Defendant argues that "as a preliminary matter, it does not appear that there are any specific rules, policies, customs or practices that apply to coding a warrant 'full extradition' or 'no extradition' in national crime databases, at all." (*Id.* at 10). Defendant continues that:

> [t]o that end, the Defendant cannot identify case law speaking to the discrete issue of whether or not a police officer may request that another law enforcement agency change the extradition status of an outstanding warrant, let alone a robust consensus of case law with closely analogous facts. In other words, there is no clearly established authority establishing that individuals have a right against one law enforcement agency contacting another law enforcement agency for the purpose of asking whether the originating agency is willing to change the extradition status of a warrant.

(*Id.* at 11). The Court agrees with Defendant on this point. This Court has not found, nor has any party provided, any case law "speaking to the discrete issue of whether or not a police officer may request that another law enforcement agency change the extradition status of an outstanding warrant". Thus, if the question here was whether it is clearly established that an officer may not request that another law enforcement agency alter the extradition status on an outstanding warrant, and that doing so constitutes a constitutional violation, Cargan would be entitled to qualified immunity. In other words, even assuming that Plaintiff suffered a deprivation of liberty under the due process clause, Cargan would be

entitled to qualified immunity if the sole act allegedly undertaken by him was requesting that the Escambia County Sheriff's Office change the extradition status of the warrant. However, as set forth above and reiterated below, the record reflects a series of material factual disputes with respect to Cargan's acts and omissions which, when taken together and looked at in the light most favorable to Plaintiff, require that the Court deny Defendant's request for qualified immunity at this time.

In contrast to the right selectively identified by Defendant, the right at issue in the present case is better characterized as the right to be free from the knowing use by a police officer of fabricated evidence in order to bring about an individual's arrest and criminal charge.

In *Halsey*, the defendants argued that they were entitled to a qualified immunity defense on the fabrication of evidence claim because "back in 1985, [the Third Circuit] had not explicitly recognized Fourteenth Amendment stand-alone claims based on the fabrication of evidence," and therefore "it would not have been known to an officer what the elements of such a claim are or how it would be applied and analyzed by a court." *Halsey*, 750 F.3d at 295 (internal quotation marks and brackets omitted). The Court rejected this argument, explaining:

> Analogous precedent should have informed appellees or any reasonable state actor that, by fabricating evidence for use in a criminal prosecution, a state actor would violate a defendant's constitutional rights regardless of whether or not the state actor violated other constitutional rights of the defendant. The Supreme Court established decades before the original investigation in this case that the Constitution forbids prosecutors from knowingly using perjured

testimony to secure a criminal conviction. *See id.* (citing *Pyle v. Kansas,* 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214 (1942)); *see also Miller v. Pate,* 386 U.S. 1, 7, 87 S.Ct. 785, 788, 17 L.Ed.2d 690 (1967) ("More than 30 years ago this Court held that the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence."). Investigators, including appellees, should have known long before Halsey's prosecution that they would be violating a defendant's constitutional rights if they knowingly used fabricated evidence to bring about his prosecution or to help secure his conviction, particularly if the investigators themselves had fabricated the evidence. *Cf. Devereaux,* 263 F.3d at 1075 ("[T]he wrongfulness of charging someone on the basis of deliberately fabricated evidence is sufficiently obvious, and *Pyle* is sufficiently analogous, that the right to be free from such charges is a constitutional right."). Indeed, it has been an axiomatic principle of our justice system that "those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit." *Limone v. Condon,* 372 F.3d 39, 45 (1st Cir. 2004). As the Court of Appeals for the First Circuit said in *Limone,* "we are unsure what due process entails if not protection against deliberate framing under color of official sanction." *Id.*

*Id.* at 295-296. *See also, Devereaux,* 263 F.3d at 1074-1075 ("Undertaking the first step of the two-step qualified immunity inquiry, we are persuaded that there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."); *Spencer v. Peters,* 857 F.3d 789, 800 (9th Cir. 2017)[4]; *Burke v. Town of Walpole,* 405 F.3d 66, 86 (1st Cir. 2005)[5].

---

[4] In *Spencer,* the Ninth Circuit, citing to the Second and Third Circuits, explained:

the Constitution prohibits the deliberate fabrication of evidence whether or not the officer knows that the person is innocent. *See Devereaux,* 263 F.3d at 1074-75 . . . ; *Halsey v. Pfeiffer,* 750 F.3d 273, 292-93 (3d Cir. 2014) ("[N]o sensible concept of ordered liberty is consistent with law enforcement cooking up its own evidence."); *see also Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997) ("No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee.").

857 F.3d at 800.

The afore-cited caselaw demonstrates that a number of Circuit Courts have found that the right to be free from the knowing use by a police officer of fabricated evidence has been clearly established, as well as the right to be free from arrest pursuant to a warrant that would not have issued if the material exculpatory evidence had been provided to the magistrate issuing the warrant or officer seeking the warrant. If it were beyond dispute here that Cargan did not know that Florida was not going to extradite DeLade, or formally request DeLade's extradition, and that Florida had no intention of coming to retrieve DeLade from Pennsylvania, the lens through which the Court would view this case and Defendant's assertion of qualified immunity, would be significantly different. However, the record evidence is in dispute not only as to what Lt. Blake told Cargan as to whether Florida would come for DeLade, but the record is also unclear as to whether Cargan, if he knew Florida would not extradite and retrieve DeLade from Pennsylvania, purposely withheld this information from the arresting officers in order to ensure the officers filed a criminal

---

[5] In *Burke,* a police officer who had withheld exculpatory DNA evidence from the magistrate judge who issued the warrant to arrest the plaintiff argued that he had "no constitutional duty to disclose exculpatory evidence to anyone [prior to Plaintiff's arrest] because he was neither an affiant for the arrest warrant nor technically an arresting officer (merely a searching officer)." 405 F.3d at 85. The First Circuit rejected this argument, stating:

> However Trooper McDonald chooses to characterize or minimize his role, the summary judgment record establishes that he was centrally involved in the collection of evidence to be used to secure an arrest warrant for [Plaintiff]. At the time of [Plaintiff's] arrest, his constitutional right to be free from arrest pursuant to a warrant that would not have issued if material exculpatory evidence had been provided to the magistrate was clearly established, as was Trooper McDonald's concomitant constitutional duty of full disclosure of exculpatory information to fellow officers seeking warrants based on probable cause.

405 F.3d at 86.

complaint against DeLade for the sole purpose of Cargan being able to hold DeLade for questioning about the recent shootings at the PSP Barracks.[6]  Similarly, the record further does not reflect whether, if Cargan did withhold all of this information, the arresting officers would have filed a criminal complaint against DeLade, leading to his arrest – a significant issue where the affidavit of probable cause states that the Florida warrant "was full extradition" and that there was communication between Cargan and the arresting troopers wherein Trooper Oliver "was contacted by Tpr. [Cargan] . . . who informed him that [DeLade] had an extraditable warrant entered into NCIC out of the State of Florida" (Doc. 55, Ex. B).

For these reasons, material disputes of fact exist such that Defendant's request for qualified immunity must be denied at this time.

---

[6] As Plaintiff states:

If there were no grounds for the arrest prior to requisition charge, and Plaintiff was arrested for the unlawful possession of a firearm charge – a misdemeanor – he would have been eligible for bond and would have been released the same day (which is what actually occurred when the extradition charges were withdrawn on September 17, 2014).

(Doc. 62, at 17 n.5).

## III. CONCLUSION

Accordingly, the Court will adopt in part and reject in part the Magistrate Judge

Carlson's R&R (Doc. 59) for the reasons set forth herein. The Court will thus grant in part

and deny in part Defendant's motion for summary judgment, leaving for trial Plaintiff's

Fourteenth Amendment due process claim.

A separate Order follows.

Robert D. Mariani
United States District Judge